UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KELVIN LEON,**<br><br>**Defendant.** | Case No. 25-MJ-202 |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Crime of Violence) and 18 U.S.C. § 3142(f)(2)(A) (Serious Flight Risk) as the defendant, Kelvin Leon, is charged with Possession of a Machine Gun in violation of 18 U.S.C. § 922(o); Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871; Endangerment with a Firearm (Public Place) in violation of DC Code § 4503(a)(2)(B); and Unlawful Discharge of a Firearm in violation of 22 DC Code § 4503.01.

Defendant Leon stands before this Court charged with illegally possessing a ghost gun equipped with a Machine-gun Conversion Kit—a privately made, untraceable firearm, modified to fire all fifteen rounds in the magazine with a single pull of the trigger. But Defendant Leon did not just possess this deadly weapon; he fired it blindly into the air outside of his apartment window in an apparent attempt to scare individuals on the street below. Given Defendant's troubling behavior in procuring this firearm and using it to endanger the community, as well as his lack of ties to the community, there is no condition or combination of conditions apart from detention that would ensure the safety of the community and Defendant's return to court. Thus, this court should detain him pending trial.

I. **Factual and Procedural History**

On July 14th, 2025, Metropolitan Police Department ("MPD") of the District of Columbia Investigator Kelemen received a firearm tip from an anonymous citizen. The tip stated that a gentleman in the window of apartment "101" pointed a firearm out of the window and fired it in the air. The anonymous caller described the shooter as a Hispanic male, mid-20s, possibly 5'7", skinny build, dark hair in a bowl cut, wearing a tank top with multiple tattoos on his chest.

Investigator Kelemen reached out to the phone number provided on the tip. The anonymous citizen answered the phone and spoke with Investigator Kelemen. After further investigation, Investigator Kelemen was able to obtain a D.C. Superior Court Search Warrant for 2400 Marion Barry Avenue SE, Apartment 101, Washington, D.C. 20020.

On July 24, 2025, members of MPD's Violent Crime Suppression Division ("VCSD") responded to 2400 Marion Barry Avenue SE, Apartment 101, Washington, D.C. 20020 to execute the search warrant (2025 CSWSLD 003161). MPD Seargent Wershbale and MPD Investigator Hinostroza conducted a knock and announce. The door was opened by an occupant inside. Two individuals were present at the residence and detained in the living room without incident. Once the residence was secured and photographed, a search of the premises was conducted. Inside one of the bedrooms in the property, law enforcement found and seized a Privately-Made-Firearm (PMF), manufactured from a "Polymer80" kit, bearing no serial number, 9mm semiautomatic pistol, with fifteen rounds in the magazine and a Machine-gun Conversion Device ("MCD"). *See* Figures 1 and 2. An MCD is utilized to convert a semiautomatic firearm to one that shoots more than one round of ammunition, without manual reloading, by a single function of the trigger, i.e., a machine gun.



*Figure 1: Recovered Ghost Gun with MCD (circled in red)*



*Figure 2: Magazine and 15 Rounds of Ammunition*

In that same bedroom, investigators also located a satchel bag that contained multiple cards and bank cards for Defendant Leon, who had been detained in the living room of the residence.

Based on the facts and circumstances surrounding the seized evidence, Leon was placed under arrest and transported to MPD's 6th District station for processing. Once at the 6th District, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Nobi Thomas ("SA Thomas"), MPD Investigator Tipps, and MPD Investigator Hernandez-Martinez interviewed Leon after Leon voluntarily waived his Miranda rights. During that discussion, Leon told SA Thomas and the other investigators that: (i) an incident took place where two men were messing with scooters that belonged to him; (ii) the scooters were located in the grassy area in the front of the apartment building; (iii) the two men began to argue about the scooters when Leon placed his firearm out of the window, firing one shot towards the sky to scare them off; (iv) he purchased the seized firearm approximately three weeks before the interview; and (v) he purchased the MCD after one week of owning the firearm. Leon displayed knowledge of the function and capability of the MCD he affixed to the firearm. Leon explained that he affixed the MCD to the firearm after watching instructional videos on YouTube.

ATF members queried the ATF National Firearms Act ("NFA") Database and the ATF Federal Licensing System to determine whether Leon had an NFA registration, a Federal Firearms License, or a permit for the PMF (bearing no serial number), 9mm semi-automatic pistol, affixed with an MCD. No such registration, license, or permit was found.

Leon was charged in DC Superior Court case number 2025-CF2-008529 on July 25, 2025, with Felony Possession of a Prohibited Weapon and Possession of a Machine Gun. On August 13, 2025, the Court granted the Government's motion for pretrial detention, noting the serious nature of the offense and the strength of the Government's case. A Complaint was filed in District Court on September 5, 2025, charging Leon with Possession of a Machine Gun in violation of 18 U.S.C.

§ 922(o); Possession of an Unregistered Firearm in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871; Endangerment with a Firearm (Public Place) in violation of DC Code § 4503(a)(2)(B); and Unlawful Discharge of a Firearm in violation of 22 DC Code § 4503.01. Leon was presented in District Court on September 11, 2025, and a detention hearing was set for September 18, 2025.

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### 1. The United States's Basis for Detention

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (Crime of Violence) and 18 U.S.C. § 3142(f)(2)(A) (Serious Flight Risk) because Defendant is a danger to the community, given his reckless and dangerous actions, and a serious flight risk, given his illegal immigration status and the immigration detainer currently lodged against him.

A defendant must be detained pending trial if the court determines that no condition or

combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In contrast, "[a] determination that an individual is a flight risk must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

As the court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g).

    **A.**    <u>**The Nature and Circumstances of the Offenses Weigh in Favor of Detention**</u>

The nature of Defendant's conduct is serious and weighs heavily in favor of pretrial detention in this case. First, Defendant is charged with serious offenses carrying significant penalties. For violating 18 U.S.C. § 922(o), Leon faces a maximum sentence of up to ten years imprisonment. *See* U.S.C. § 924(a)(2). For violating 26 U.S.C. §§ 5845(a), 5861(d), and 5871, Leon faces a maximum sentence of ten years imprisonment. *See* 26 U.S.C. § 5871. For violating 22 DC Code, §§ 4503.03(a)(2)(B) and 4503.01, Leon faces a maximum sentence of five years and two years of imprisonment on each charge, respectively.

As a threshold matter, the Court has repeatedly held that simple possession of a loaded firearm poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d

6

116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020).

However, this crime presents a particular danger to the community because the firearm recovered from Leon was an untraceable ghost gun that had been modified with a MCD.

Ghost guns are untraceable firearms without serial numbers that are privately made, assembled by individuals from parts or purchased as Do-It-Yourself kits or that include one unfinished piece, typically the frame or receiver, that requires the purchaser to take steps (such as drilling) to make the gun fully functional. Ghost guns pose a unique risk to the community because their creation and possession circumvent background checks, which would have prevented the Defendant from possessing a firearm as a convicted felon here. Indeed, between 2017 and 2023, law enforcement recovered 92,702 untraceable ghost guns lacking serial numbers, which were obtained without background checks. Moreover, the number of ghost guns recovered in crimes across the United States surged nearly 1,600% (from 1,629 to 27,490) with almost 1,700 being

7

connected homicides and over 4,000 linked to separate violent crimes. *See* Dep't of Justice, *Justice Department Announces ATF's Publication of Final Volume of National Firearms Commerce and Trafficking Assessment* (Jan. 28, 2025), https://www.justice.gov/archives/opa/pr/justice-department-announces-atfs-publication-final-volume-national-firearms-commerce-and.

Machine-gun conversion kits, such as the one Defendant bought and outfitted on his firearm, convert a semi-automatic firearm into a machine gun by allowing the firearm to continuously shoot rounds without manual reloading. There has been an exponential boom in machine gun conversion switches nationwide. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, 4-5 (2023) "National Firearms Commerce and Trafficking Assessment (NFCTA): Crime Guns - Volume Two," https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-vii-recommendations/download (noting 570% increase in recovered machine gun conversion parts in 2017 to 2021 compared to 2012 to 2016). Our community has not escaped this alarming trend and the dramatic increase in machinegun conversion devices recovered in the past few years alone is frightening. Below are the estimated number of recovered MCDs recovered in Washington D.C. over the last few years, according to ATF:

- 2021: 27 Machinegun Conversion Switches Recovered
- 2022: 119 Machinegun Conversion Switches Recovered
- 2023: 195 Machinegun Conversion Switches Recovered
- 2024: 200 Machinegun Conversion Switches Recovered

In other words, there was an over 340% increase in recoveries MCDs in DC from 2021 to 2022. This trend accelerated in 2023 and 2024, with an over 640% increase in recoveries of MCDs in DC from 2021 through 2024

The danger posed by firearms such as the one recovered here cannot be overstated. Through these modifications, Defendant's firearm had been effectively transformed from an already-dangerous loaded handgun into an untraceable weapon of war, ready to spray over a dozen rounds of ammunition on the target of Defendant's choosing, or in this case, anybody who happened to be standing wherever the bullets fell. These facts weigh heavily in favor of detention.

### B.  The Weight of the Evidence Against Defendant Favors Pretrial Detention

The weight of the evidence against Defendant also weighs heavily in favor of pretrial detention. The facts here are generally not in dispute. Officers executed a search warrant in Defendant Leon's apartment, where they recovered the firearm and ammunition in his bedroom. In that same room, officers also recovered a satchel bag that contained multiple identification cards and bank cards belonging to Leon. After Leon was *Mirandized*, he admitted to possessing the firearm, outfitting it with an MCD with the help of a YouTube tutorial, and firing it into the air to scare of individuals on the street below. This factor weighs also weighs heavily in favor of detention.

### C.  Defendant's History and Characteristics Weigh in Favor of Detention

The third factor—Defendant's history and characteristics—favors detention because Defendant is dangerous and a flight risk. Although Leon has no previous arrests or known contacts with law enforcement, his illegal immigration status and pending immigration detainer raise serious concerns of whether Leon will return to court.

Leon entered the United States from Venezuela in July 2022 and was given Temporary Protected Status (TPS). Leon's TPS has since expired, and an immigration detainer against him is currently pending. As such, Leon's incentives to return to court in the face of such a detainer are

minimal, as it will either result in his prompt removal or incentivize him to flee if he is not immediately detained by Immigration and Customs Enforcement upon release. "Some courts have held that detention is required in this situation because, when a defendant will likely be deported if released, there are no possible conditions that could 'reasonably assure the appearance of the person as required.'" *United States v. Ramirez*, No. 8:24-cr-370-VMC-AEP, 2025 U.S. Dist. LEXIS 84614, at *6 (M.D. Fla. May 5, 2025) (quoting *United States v. Hernandez-Saldivar*, No. 4:22-cr-00266-RDP, 2022 U.S. Dist. LEXIS 173246 *3 n.7 (N.D. Ala. Sept. 26, 2022); *United States v. Siyuan Ye*, No. 2:23-cr-183, 2023 U.S. Dist. LEXIS 230231, at *6 (S.D. Ohio Dec. 28, 2023) (expired legal status is a contributing factor to flight risk); *United States v. Reyes Gonzales*, Crim. No. ABA-25-171, 2025 U.S. Dist. LEXIS 119103, at *2-3 (D. Md. June 24, 2025) (rejecting argument that immigration detainers should not be considered in deciding pretrial release or detention under the BRA). *But see United States v. Marroquin-Ramirez*, 778 F. Supp. 3d 498 (N.D.N.Y. 2025) (holding that consideration of immigration detainer would be improper under Second Circuit precedent, but still finding that Government has carried its burden of showing that defendant presents a flight risk); *United States v. Reymundo*, No. MJM-25-187, 2025 U.S. Dist. LEXIS 133956, at *10 (D. Md. July 15, 2025) (holding that an immigration detainer is not a proper consideration in deciding whether defendant has *ability* to flee, but is a proper consideration in assessing whether defendant has an *incentive* to flee). Further, to the Government's knowledge, Leon has little to no ties to the community. He has no known employment, no known family in the area, and no known connections to the District besides living here for just over three years. Therefore, this factor weighs in favor of detention.

## D. The Danger to the Community Created by Defendant's Release Weighs in Favor of Detention

The fourth factor, the nature and seriousness of the danger to any person or the community posed by Defendant's release, similarly weighs heavily in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Leon's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995).

Here, however, the danger posed by Leon's possession of this firearm is not just conjecture. As recounted above, Defendant admitted that he: (i) procured an unregistered ghost gun, (ii) equipped it with at least fifteen rounds in the magazine, (iii) modified it with an MCD using a YouTube video tutorial, allowing the gun to fire automatically with a single pull of the trigger; and (iv) fired it blindly into the air out of his apartment window in an attempt to scare other individuals on the street below.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Leon's egregious

11

conduct showcases that he is an obvious and articulable threat to the community, and he should be detained pending trial.

### III. Conclusion

The government respectfully requests that the court issue an Order granting its motion that Defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Jonathan A. Sussler*
Jonathan A. Sussler
N.Y. Bar No. 5973912
Special Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
Federal Major Crimes Section
601 D Street NW
Washington, D.C. 20530
(202) 815-8576
Jonathan.Sussler2@usdoj.gov